FILED

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

2008 JUN -6  P 12: 06

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | |
|---|---|
| X COMPANY, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 1:08cv591 |
| | ) cm1tjJFA |
| JANE DOE, | ) FILED UNDER SEAL |
| Defendant. | ) |

## COMPLAINT

Plaintiff X Company ("the Company"), by its attorneys, alleges as follows:

### NATURE OF THE CASE

1. This action arises out of defendant Jane Doe's improper retention and disclosure of plaintiff X Company's privileged and/or confidential information.

2. Defendant Jane Doe ("Doe") served as in-house counsel for the Company from January 2006 until her employment termination approximately one year later for performance reasons.

3. As in-house counsel for the Company, Doe was entrusted with the Company's privileged, confidential, and proprietary information on a range of matters. As a condition of her employment, she signed a confidentiality agreement, by which she agreed to keep the Company's information strictly confidential, as well as return all Company documents in her possession upon termination of her employment.

4. Notwithstanding this agreement, and her ethical obligations under the rules of professional conduct where she was actively licensed, Doe failed to return all Company

documents upon the termination of her employment. Instead, in violation of her contractual, fiduciary, and ethical obligations as a lawyer, Doe surreptitiously copied or removed from her Company computer and files dozens, and potentially hundreds, of privileged and/or confidential documents.

5. In further violation of her contractual, fiduciary, and ethical obligations to the Company, Doe has voluntarily disclosed privileged and/or confidential information to attorneys from at least three law firms.

6. Doe has also voluntarily disclosed privileged and/or confidential information to two agencies of the U.S. government in pursuit of monetary claims against the Company. Doe did so in circumstances where such disclosure was unnecessary, and she did not engage in any protective measures to protect such information from further disclosure.

7. Doe also disclosed privileged and/or confidential information and documents to a reporter (or to a third person who provided the information and documents to the reporter) in the hopes of injuring the reputation of, and embarrassing her former client.

8. Recently, Doe, through her counsel, admitted that she has retained the Company's privileged and/or confidential information but has ignored repeated demands that she return such information.

9. Doe has refused to identify the documents and information that she has retained, has refused to certify that she has not disclosed any of the Company's privileged and/or confidential documents to anyone other than her attorneys, and most recently, has claimed that she is entitled to make additional disclosures of the Company's confidential manner without restriction.

10. The Company has filed this action only after all extrajudicial efforts to obtain the documents from Doe were exhausted. This action is the only recourse that the Company has to

protect its attorney-client privilege and/or confidential information and documents, obtain the return of those documents, and ensure that Doe honors her contractual and fiduciary obligations to the Company, as well as her duty, as the Company's former counsel, to maintain its confidences and secrets.

## JURISDICTION AND VENUE

11. This Court has jurisdiction over this matter under 28 U.S.C. § 1332(a)(1), as the matter in controversy is between citizens of different states and exceeds the sum or value of $75,000, exclusive of interest and costs.

12. This Court has personal jurisdiction over Doe in this case because Doe resides in, and can be served in this District.

13. Venue is proper pursuant to 28 U.S.C. § 1391 because Doe resides in this District and a substantial part of the events or omissions giving rise to this action occurred in this District.

## FACTUAL ALLEGATIONS

### The Parties

14. The Company is a New York corporation with its principal place of business outside the District.

15. Doe is a natural person who, upon information and belief, resides within this District. She was employed as Commercial Counsel for the Company and worked out of the Company's offices in Kentucky. She is an active member of the District of Columbia Bar.

## The Company Hires Doe as In-House Counsel

16. Doe was hired as Commercial Counsel for one of the Company's businesses in January 2006. In this role, Doe had primary responsibility for regions outside of the United States.

17. As Commercial Counsel, Doe reported directly to the business' General Counsel. Doe had three direct reports, each of whom was resident outside of the United States.

18. Doe's position as Commercial Counsel gave her access to a significant amount of privileged, confidential, and proprietary information belonging to the Company.

## Doe Executes a Confidentiality Agreement

19. During the course of her employment, Doe agreed to protect and refrain from disclosing or misusing the Company's proprietary and confidential information.

20. On January 3, 2006, as a condition of her employment with the Company, Doe executed an Employer Innovation and Proprietary Information Agreement ("Confidentiality Agreement") wherein she specifically agreed: (i) upon the Company's request, or upon termination of her employment, to promptly deliver to the Company all items belonging to the Company, including all documents and other material of a secret or confidential nature relating to the Company's business; and (ii) not to use, publish or disclose to third parties any secret or confidential information relating to the Company, either during or subsequent to her employment.

21. The Confidentiality Agreement broadly defines "secret" and "confidential" information to include any information that is not generally known to the public.

## Doe Is Terminated for Performance Reasons

22.   The Company reluctantly decided to terminate Doe's employment for performance reasons after she was employed for approximately a year. Although Doe had never complained about discrimination or retaliation during her employment, at the start of her termination meeting on November 29, 2006, Doe handed the Human Resources Manager a copy of a complaint she had filed through Company channels moments earlier.

23.   Doe's complaint alleged that her job was being threatened because she participated in and reported past alleged illegal activity that she claimed had occurred prior to the start of her employment. Doe also claimed that she was being discriminated against based on her ethnicity.

24.   Because the Company takes all such complaints seriously, the implementation of the termination decision was put on hold pending an investigation of Doe's allegations that the decision had been influenced by an unlawful motive. After spending more than a month diligently investigating Doe's allegations, the Company found no evidence to substantiate Doe's allegations that the termination decision was motivated by retaliation for any alleged protected activity or because of her ethnicity.

25.   Doe was, therefore, terminated effective January 2007.

## Doe Wrongfully Retains and Discloses Privileged and/or Confidential Information

26.   Shortly after Doe's termination, Company counsel sent a letter to Doe reminding Doe of her obligation to maintain in the strictest confidence all privileged and/or confidential information with which she had been entrusted during her employment.

27.   During the spring and summer of 2007, Doe filed complaints with two agencies of the U.S. government seeking monetary recovery against the Company for purported retaliation and discrimination. Although Doe had no need to divulge privileged and confidential

information in her administrative complaints, she did so, and further failed to take any protective measures to safeguard the Company's confidences.

28. On December 14, 2007, after Doe changed attorneys for the second time, her new attorney stated to counsel for the Company that she had "marching orders" go to the press and/or report the Company's allegedly fraudulent activities if the Company would not mediate the two complaints, within the following week, that Doe had filed with the governmental agencies. The Company declined to cede to the demands of Doe's attorney.

29. Not long after, a news reporter in fact contacted the Company inquiring into the very activities that were the subject of Doe's allegations. The reporter advised the Company that a "source" had given him hundreds of pages of confidential Company documents, including documents that he identified as being attorney-client privileged. The reporter stated that he was writing an article on these issues and wanted the Company to respond.

30. Shortly after this conversation, the reporter sent a follow-up e-mail specifically identifying certain Company documents that he received from his "source." These included documents circulated among Company counsel plainly marked "Privileged and Confidential," "Strictly Confidential," or "PRIVILEGED & CONFIDENTIAL. ATTORNEY WORK PRODUCT. ATTORNEY CLIENT PRIVILEGED COMMUNICATION – DO NOT REPRODUCE OR DISTRIBUTE WITHOUT APPROVAL OF COUNSEL." All were documents that Doe is known to have authored or received, or to which she had access, during her employment with the Company.

31. While the reporter would not reveal his source's name, the circumstances leave little room for doubt that Doe is the source. For example, the issues the reporter raised in his conversation with the Company are the very same issues Doe raised in her internal complaint,

one of her governmental agency complaints, and a Declaration she filed in support of a motion that she filed with a governmental agency.

32. Significantly, almost all of the documents that the reporter identified as having received from his source are documents that Doe is known to have authored, received, or had access to during her employment with the Company.

33. Moreover, it is clear that Doe retained some of the documents referenced by the reporter, as the level of detail contained in Doe's governmental agency complaint and her Declaration would be difficult to commit to memory without the aid of the documents themselves.

34. A recent forensic analysis revealed that one of the documents referenced by the reporter was downloaded to an external device attached to Doe's Company computer. An examination of Doe's Company e-mail files also showed that Doe e-mailed a number of documents referenced by the reporter to her personal e-mail account.

### Doe Refuses to Return Privileged and/or Confidential Information

35. Soon after being contacted by the reporter, counsel for the Company sent a letter communicating the Company's belief that Doe wrongfully disclosed privileged information to an outside party.

36. In her letter, counsel for the Company reiterated the Company's demand that Doe immediately return any and all documents, whether in hard copy or electronic form, that she may have retained after she left her employment as an attorney. In so doing, counsel for the Company referenced Doe's Confidentiality Agreement, which obligated her to return all documents relating to her employment on the date of termination, and the D.C. Rules of Professional Conduct, which compel Doe, as well as her counsel, to return materials Doe

retained as a result of her representation of the Company. Counsel for the Company also demanded that Doe refrain from any further disclosures of confidential Company information.

37. Doe's counsel responded to counsel for the Company's letter, baldly stating that Doe and her attorneys are not obligated to return documents Doe obtained during the course of her employment as counsel for the Company. Doe's letter nowhere denied that Doe had retained and disclosed privileged and/or confidential documents belonging to the Company.

38. Counsel for the Company and Doe's counsel continued to exchange correspondence on this issue, through which counsel for the Company repeatedly requested that Doe return any and all materials she had taken from the Company and refrain from making any further improper disclosures. Ultimately, Doe refused to return any documents she retained from her employment at the Company; refused to advise the Company of the specific information she has retained; refused to certify that she had disclosed the Company's confidential information to no one but her own attorneys; and claimed that she had an unfettered right to disclose the Company's confidences as she deemed fit.

39. Counsel for the Company thereafter requested Doe's agreement to a 21-day standstill period, during which she and her attorneys would refrain from further disclosing any privileged or confidential information to any party or tribunal, in order to give the parties additional time to attempt an amicable resolution of their disputes with respect to these documents. Doe and her counsel, however, refused to agree to a 21-day standstill period and within days made further unauthorized disclosures to a governmental agency.

40. To date, Doe has failed to honor her contractual, ethical, and legal obligations, and continues to retain – and to threaten to disclose – the Company's privileged and/or confidential information without authorization or legal justification.

## COUNT I
## (Breach of Contract)

41. The Company repeats and realleges the foregoing paragraphs as if fully set forth herein.

42. As described above, Doe was contractually bound to the terms of the Confidentiality Agreement.

43. Doe breached her contractual obligations by (a) refusing to return the Company's privileged and/or confidential information upon her termination and upon the Company's repeated requests; and (b) disclosing the Company's protected information to third parties without the Company's authorization.

44. As a direct result of Doe's breach of contract, the Company has suffered irreparable harm and will continue to suffer irreparable harm, which cannot be redressed at law, unless Doe is enjoined from engaging in any such further conduct.

45. Furthermore, as a result of Doe's breach of contract, the Company has been damaged in an amount to be proven at trial, but believed to be in excess of $100,000. These damages also include recovery for the Company's pre-litigation attorneys' fees and costs incurred in seeking to obtain Doe's compliance with her obligations under the Confidentiality Agreement.

## COUNT II
## (Breach of Implied Covenant of Good Faith and Fair Dealing)

46. The Company repeats and realleges the foregoing paragraphs as if fully set forth herein.

47. Doe's Confidentiality Agreement contains an implied covenant of good faith and fair dealing that imposes upon her a duty to act in a *bona fide* or good faith manner.

48. Doe acted in bad faith by wrongfully retaining and disclosing the Company's privileged and/or confidential information, thereby depriving the Company of the benefit of the bargain originally intended by the parties when they executed the Confidentiality Agreement. Doe again acted in bad faith by refusing to identify the documents she has retained, or what use she has made of them.

49. As a direct result of Doe's breach of the implied covenant of good faith and fair dealing, the Company has suffered irreparable harm and will continue to suffer irreparable harm, which cannot be redressed at law, unless Doe is enjoined from engaging in any such further conduct.

50. Furthermore, as a result of Doe's breach of the implied covenant of good faith and fair dealing, the Company has been damaged in an amount to be proven at trial, but believed to be in excess of $100,000. These damages also include recovery for the Company's pre-litigation attorneys' fees and costs incurred in seeking to obtain Doe's compliance with her obligations under the Confidentiality Agreement.

## COUNT III
### (Breach of Fiduciary Duty)

51. The Company repeats and realleges the foregoing paragraphs as if fully set forth herein.

52. As described above, in performing her duties for the Company, Doe had knowledge of, and access to, the Company's privileged, confidential, and proprietary information.

53. As the Company's in-house counsel, Doe owed the Company a fiduciary duty to exercise in all her relationships with the Company the most scrupulous honor, good faith, and fidelity to the Company's interest.

54. This fiduciary duty includes the obligation to honor her ethical responsibilities and to preserve the Company's confidences and not to use, exploit, or divulge the Company's privileged and/or confidential information.

55. Doe has retained the Company's privileged and/or confidential information without authorization and has revealed the Company's confidences and secrets. In so doing, Doe has breached her fiduciary duty to the Company.

56. As a direct result of Doe's breach of fiduciary duty, the Company has suffered irreparable harm and will continue to suffer irreparable harm, which cannot be redressed at law, unless Doe is enjoined from engaging in any such further conduct.

57. Furthermore, as a result of Doe's breach of fiduciary duty, the Company has been damaged in an amount to be proven at trial, but believed to be in excess of $100,000. These damages also include recovery the Company's its pre-litigation attorneys' fees and costs incurred in seeking to obtain Doe's compliance with her obligations under the Confidentiality Agreement.

## COUNT IV
### (Misappropriation of Trade Secrets – Kentucky Uniform Trade Secrets Act)

58. The Company repeats and realleges the foregoing paragraphs as if fully set forth herein.

59. The Company's protected information has independent economic value.

60. At all relevant times, the Company has taken reasonable and necessary measures to safeguard the secrecy and confidentiality of its protected information by, among other things, requiring employees to execute and adhere to agreements that specifically require them to keep such information confidential; restricting employee access to such information on a need-to-know basis; monitoring the conduct of employees with access to such information; and enforcing its rights when employees, like Doe, attempt to violate their obligations.

61. Doe received and was given access to the Company's protected information solely by virtue of her position as the Company's in-house counsel, and such information is not otherwise readily ascertainable by proper means.

62. Doe is under contractual, common law, and ethical duties to keep the Company's protected information confidential, and not to use, exploit, or divulge such information other than for the Company's benefit.

63. By engaging in the conduct described throughout this Complaint, Doe has misappropriated the Company's trade secrets and confidential information, without the consent of the Company, to the detriment of the Company, and for her own personal advantage, without regard to the Company's rights, and without compensation, permission or license, in violation of the Kentucky Uniform Trade Secrets Act.

64. Doe has refused to return the Company's protected information.

65. The misappropriation of the Company's protected information by Doe constitutes willful and malicious misappropriation.

66. Doe's conduct has caused and, unless restrained, will continue to cause the Company severe, immediate, and irreparable injury, for which the Company has no adequate remedy at law.

67. Furthermore, as a result of Doe's misconduct, the Company has been damaged in an amount to be proven at trial, but believed to be in excess of $100,000. These damages also include recovery for the Company's pre-litigation attorneys' fees and costs incurred in seeking to obtain Doe's compliance with her obligations under the Confidentiality Agreement.

68. The Company also seeks recovery of its attorneys' fees and costs incurred in seeking to obtain Doe's compliance with her legal obligations to the Company.

## COUNT V
### (Conversion)

69. The Company repeats and realleges the foregoing paragraphs as if fully set forth herein.

70. The Company owned the privileged and/or confidential information and documents referenced above and had the possession of and/or the right to possess such information and documents at the time Doe wrongfully misappropriated them.

71. As described above, Doe has exercised dominion over the Company's privileged and/or confidential information and documents in a manner which denied the Company's exclusive right to use that information and those documents.

72. Doe took and retained the Company's privileged and/or confidential information documents for her own use and benefit, intending to interfere with the Company's possession of its information and documents.

73. Doe has refused the Company's repeated demands that she return the privileged and/or confidential documents she took from the Company.

74. The Company has suffered irreparable harm and will continue to suffer irreparable harm, which cannot be redressed at law, unless Doe is enjoined from engaging in any such further conduct.

75. Furthermore, as a result of Doe's misconduct, the Company has been damaged in an amount to be proven at trial, but believed to be in excess of $100,000. These damages also include recovery for the Company's pre-litigation attorneys' fees and costs incurred in seeking to obtain Doe's compliance with her obligations under the Confidentiality Agreement.

## **PRAYER FOR RELIEF**

WHEREFORE, the Company prays for the following relief:

A. a preliminary and permanent injunction restraining and enjoining Doe from further disclosing any privileged and/or confidential material that she misappropriated from the Company;

B. a preliminary and permanent injunction compelling Doe to return to the Company all Company property and all privileged and/or confidential material in her possession and/or her attorneys' possession;

C. compensatory damages in an amount to be proven at trial, but believed to be in excess of $100,000, the Company's costs, attorneys' fees, expenses, and prejudgment interest; and

D. such other and further relief as may be just and proper.

Respectfully submitted,

*Of Counsel:*

MORGAN, LEWIS & BOCKIUS LLP

Barbara Van Gelder
1111 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
(202) 739-5256
(202) 739-3001 (fax)

Sarah E. Bouchard
Anne E. Martinez
1701 Market Street
Philadelphia, PA 19103
(215) 963-5277
(215) 963-5001 (fax)

Charles B. Wayne (# 24954)
Elisha A. King
DLA PIPER US LLP
500 8th Street, N.W.
Washington, D.C. 20004
(202) 799-4000
(202) 799-5000 (fax)

*Counsel for Plaintiff*