UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| _____ ) | |
| GENERAL ELECTRIC COMPANY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 08-591--TSE/JFA |
| v. ) | |
| ) | |
| ADRIANA KOECK, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS DEFENDANT'S COUNTERCLAIMS**

*Of Counsel*:

MORGAN, LEWIS & BOCKIUS LLP
Barbara Van Gelder
1111 Pennsylvania Avenue, N.W.
Washington, D.C.  20004
(202) 739-5256
(202) 739-3001 (fax)

Sarah E. Bouchard
Anne E. Martinez
1701 Market Street
Philadelphia, PA  19103
(215) 963-5077/5718
(215) 963-5001 (fax)

Charles B. Wayne
Virginia Bar No. 24954
Elisha A. King
Attorneys for General Electric Company
DLA PIPER LLP (US)
500 8th Street, N.W.
Washington, D.C.  20004
(202) 799-4000
(202) 799-5000 (fax)
charles.wayne@dlapiper.com

## TABLE OF CONTENTS

**Page**

I.     INTRODUCTION AND RECENT EVENTS ................................................................. 1

II.    STATEMENT OF FACTS ............................................................................ 3

    A.     Ms. Koeck's Employment With GE ................................................... 4

    B.     Ms. Koeck Meets With Human Resources To Discuss Transferring To Another GE Division. .................................................................. 5

    C.     Ms. Koeck Presents Her Ombuds Complaint ...................................... 5

    D.     Investigation Of Ms. Koeck's Ombuds Complaint............................... 6

    E.     Ms. Koeck's Meetings With Ms. Harris To Effectuate The Termination ............ 7

III.   PROCEDURAL HISTORY............................................................................ 8

IV.    ARGUMENT ............................................................................................ 10

    A.     The Court Should Dismiss Ms. Koeck's Counterclaims Because They Are Covered By Her ADRP Agreement....................................... 10

        1.     Ms. Koeck Agreed To Be Bound By The ADRP Agreement ................. 10

        2.     Ms. Koeck Agreed To Arbitrate Her Claims ........................................... 12

        3.     Ms. Koeck's SOX Claim Is Arbitrable .................................................... 13

        4.     Ms. Koeck's Employment Related Claims For Retaliation And Wrongful  Discharge Also Are Arbitrable................................................ 15

    B.     The Court Should Dismiss Ms. Koeck's SOX Counterclaim Because Ms. Koeck Admits And The Facts Further Demonstrate That Ms. Koeck Failed To Timely File Her SOX Complaint. .................................................. 17

        1.     Ms. Koeck Admits That Her SOX Complaint Was Not Timely Filed ...................................................................................................... 17

        2.     Even Ignoring Ms. Koeck's Admission, Ms. Koeck Cannot Establish That Her SOX Complaint Was Timely Filed........................... 18

    C.     The Court Should Dismiss Ms. Koeck's Counterclaims Under Kentucky Law Because Such Claims Are Preempted and Barred by the Statute of Limitations. ....................................................................................... 23

V.     CONCLUSION............................................................................................ 25

Plaintiff General Electric Company ("GE") submits this memorandum in support of its Motion to Dismiss the Counterclaim and Amended Counterclaim filed by Defendant Adriana Koeck ("Ms. Koeck").

## I.      INTRODUCTION AND RECENT EVENTS

At the October 3, 2008 status conference, this Court set forth a briefing schedule in connection with GE's proposed Motion to Dismiss.  As GE informed the Court, it intended to file a Motion to Dismiss Ms. Koeck's sole Counterclaim, which alleges retaliation for alleged protected "whistleblowing" activity in violation of Section 806 of the Sarbanes-Oxley Act of 2002, 18 U.S.C. § 1514A ("SOX").  The deadline for filing that motion is October 15, 2008, the date on which this brief and other papers have been filed.

At the same status conference, Ms. Koeck represented that she intended to file several additional counterclaims.  These included claims for gender and national origin discrimination and retaliation arising out of Title VII of the Civil Rights Act of 1963, as amended; the Kentucky Civil Rights Act, and the Connecticut Fair Employment Practices Act.  She also represented that she would be filing counterclaims for wrongful discharge under Kentucky and Connecticut law, as well as for defamation.

After hearing the list of proposed counterclaims, the Court expressed concern that these potential counterclaims were not compulsory, and would likely be severed.  As a result, the Court required Ms. Koeck to move for leave to amend these additional counterclaims, and provided the same briefing schedule for Ms. Koeck, as set forth above for GE.

Contrary to this Court's ruling, and without addressing its legitimate concerns, Ms. Koeck filed with the Court, on October 14, an Amended Counterclaim and Notice thereof, asserting two additional causes of action:  retaliation and wrongful discharge under Kentucky common law.  In her Notice, Ms. Koeck stated that she should be permitted to amend her

Counterclaim as a matter of course, as GE had not yet filed its responsive pleading.   However, whether the Court requires Ms. Koeck to formally move to amend her pleading, or allows the now-filed Amended Counterclaim to stand, is of no moment.  Ms. Koeck's Amended Counterclaim fails in either event.  Because Ms. Koeck cannot succeed on either of the newly-asserted claims for the reasons discussed below, an amendment to assert these additional claims, should the Court grant her leave to do so, would be futile.[1]   If allowed to proceed with her Amended Counterclaim now, the claims therein fail at the outset for the reasons set forth below:

First, all of her counterclaims are subject to compulsory arbitration.  Ms. Koeck and GE agreed to resolve any and all disputes arising out of Ms. Koeck's employment with GE, including "[r]etaliation claims for legally protected activity, and/or for whistleblowing," through arbitration.  Because she contractually waived her right to bring this lawsuit, the Court has no basis to retain jurisdiction over any of her counterclaims.

Second, Ms. Koeck's SOX Counterclaim is time-barred.  SOX requires that retaliation claims be filed with the responsible administrative agency within 90 days from the date the plaintiff first learns that an adverse employment action will be taken against her.  The failure to do so precludes any subsequent federal court action.  In this case, Ms. Koeck filed her retaliation claim with OSHA more than 90 days after learning that GE intended to terminate her employment.  Indeed, in a separate action filed in a Virginia circuit court, Ms. Koeck admits that her SOX Complaint was untimely and is suing her former attorneys for malpractice for failing to meet the statutory deadline.  Further, both the OSHA investigator assigned to her claim, and the

---

[1]     Under Fourth Circuit law, leave to amend a complaint is properly denied when the proposed amendment would be futile.  See Field Auto City, Inc. v. Gen. Motors Corp., No. 1:06cv1174, 2007 WL 5471891, *1 (E.D. Va. Mar. 22, 2007) (Ellis, J.) (denying motion for leave to amend because newly proposed claim would be barred by doctrine of res judicata, and amendment would thus be futile).

Administrative Law Judge ("ALJ") who ruled on Ms. Koeck's administrative appeal, determined that Ms. Koeck was aware of GE's decision to terminate her employment 95 days prior to the date she filed her complaint, rendering her claim untimely.  For these reasons, and as OSHA and the ALJ already correctly determined, Ms. Koeck's SOX Complaint is barred by the applicable statute of limitations.

Finally, although Ms. Koeck frames her newest Kentucky law claims as arising under common law, any claim for whistleblowing is covered by the Kentucky Whistleblower Act ("KWA").  The KWA prohibits an employer from retaliating against an employee for engaging in certain protected conduct.  See Ken. Rev. Stat. Ann. § 61.101, et seq.  As set forth infra, the KWA preempts any state common law claim for retaliation arising out of the same facts and circumstances.  Moreover, and like SOX, the KWA has a ninety (90) day statute of limitations period.  As a result, her newest claims for retaliation and wrongful discharge are both preempted by the KWA, and barred by the KWA's statute of limitations.

II.     **STATEMENT OF FACTS**

The only facts this Court need consider to confirm that all of Ms. Koeck's counterclaims are subject to arbitration are set out in the Alternative Dispute Resolution Program ("ADRP") Policy Agreement that Ms. Koeck signed, attached hereto as Exhibit A; Ms. Koeck's Acknowledgement of Conditions of Employment, attached hereto as Exhibit B; and GE C&I's Alternate Dispute Resolution Program policy, attached hereto as Exhibit C.  These documents plainly demonstrate that Ms. Koeck agreed to subject her claims to arbitration and waived any right to a judicial remedy.

The remaining factual recitation set out below is provided for the Court's convenience and to demonstrate the untimeliness of Ms. Koeck's SOX Complaint and related claims under the KWA.   This factual recitation is based on (1) the allegations contained in Ms. Koeck's

Counterclaim and Amended Counterclaim; (2) allegations set forth in Ms. Koeck's Ombuds

Complaint, which is referenced in paragraphs 27 and 39 of her Counterclaim and Amended

Counterclaim, respectively; (3) the January 18, 2007 report GE provided to Ms. Koeck in

response to her Ombuds Complaint, referenced in paragraphs 28 and 40 of her Counterclaim and

Amended Counterclaim, respectively; and (4) the factual determinations made in the ALJ's

Recommended Summary Decision and Order Dismissing Complaint, a public record of which

this Court may take judicial notice.  See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 127 S. Ct.

2499, 2509 (2007) (courts may consider "when ruling on Rule 12(b)(6) motions to dismiss . . .

documents incorporated into the complaint by reference, and matters of which a court may take

judicial notice"); Sec'y of State for Def. v. Trimble Navigation Ltd., 484 F.3d 700, 705 (4th Cir.

2007) ("In reviewing the dismissal of a complaint under Rule 12(b)(6), we may properly take

judicial notice of matters of public record"); 5B Charles Alan Wright & Arthur R. Miller,

Federal Practice and Procedure § 1357 (3d ed. 2004 and Supp. 2007).  GE accepts these

allegations and statements as true, as it must, solely for purposes of this Motion.  Fed. R. Civ. P.

12(b)(6).

A.     **Ms. Koeck's Employment With GE**

On January 3, 2006, Ms. Koeck began working as Commercial Counsel for the

Consumer and Industrial Division of GE ("GE C&I") in Louisville, Kentucky.  Counterclaim ¶6

and Amended Counterclaim ¶8; ALJ's Recommended Summary Decision and Order Dismissing

Complaint ("ALJ Order"), attached hereto as Exhibit D, at p. 2.  In this role, Ms. Koeck was

responsible for certain legal matters in Brazil, Chile and Argentina, and served as a liaison to

other business units as well.  Exhibit D, at p. 2.  In this role, Ms. Koeck reported directly to GE

C&I's General Counsel, Raymond Burse.  Exhibit D, at p. 2.

Over time, Mr. Burse became dissatisfied with Ms. Koeck's work performance. Ultimately, on October 25, 2006, he informed her that she no longer would have any direct reports; she would only work on special projects for him; her internal business clients would be reassigned; and her job title would be changed.  Exhibit D, at p. 3.

**B.     Ms. Koeck Meets With Human Resources To Discuss Transferring To Another GE Division.**

Apparently recognizing the seriousness of the action being taken against her, Ms. Koeck consulted with GE C&I Human Resources.  On October 24, 2006, Ms. Koeck first met with Delores Harris, the Human Resources Manager for GE C&I's legal department.  Exhibit D, at p. 3.  At this time, Ms. Koeck communicated that she already was looking into other roles within GE, outside of GE C&I.  Exhibit D, at p. 3.

Ms. Koeck and Ms. Harris met again in mid-November 2006 to discuss Ms. Koeck's efforts to transfer.  Exhibit D, at p. 3.  At one of these meetings, Ms. Harris offered Ms. Koeck a separation settlement, which Ms. Koeck declined.  Exhibit D, at p. 3.

Ms. Koeck also met with Ms. Harris' supervisor, Human Resources Manager Jeff Barnes, in November concerning a possible transfer.  Exhibit D, at p. 3.  Mr. Barnes informed Ms. Koeck that Mr. Burse no longer wanted her on his team and would not support her transfer to another GE department.  Exhibit D, at p. 3.

**C.     Ms. Koeck Presents Her Ombuds Complaint.**

On November 29, 2006, Ms. Harris met with Ms. Koeck for the purpose of delivering a letter terminating Ms. Koeck's employment.  Exhibit D, at pp. 3, 4.  Before Ms. Harris could do so, however, Ms. Koeck showed Ms. Harris a copy of a complaint that she had filed with GE's internal Ombudsman minutes earlier, in which Ms. Koeck alleged, "I believe I am being retaliated against including being threatened with losing my job for participating in and reporting

illegal activity engaged in by General Electric personnel and hereby request an investigation be performed into this situation."  Counterclaim ¶27 and Amended Counterclaim ¶39; Exhibit D, at p. 3; Ombuds Complaint, redacted copy attached hereto as Exhibit E.[2]  In the Ombuds Complaint, Ms. Koeck also alleged, "I also believe I am being discriminated against because I am a Latina.  This belief is based on the fact that derogatory comments have been made about me, my ancestry and other Latinos in my presence in conjunction with my work."  Exhibit E. Ms. Harris then ended the meeting.  Exhibit D, at p. 3.

   **D.**  <u>**Investigation Of Ms. Koeck's Ombuds Complaint.**</u>

   Mark Nordstrom and Jeff Eglash, Senior Counsel from GE's corporate offices, conducted an investigation of Ms. Koeck's allegations of discrimination and retaliation.  Exhibit D, at pp. 3, 4.  On January 18, 2007, Ms. Koeck received a letter from Messrs. Nordstrom and Eglash detailing their investigation's findings.  Counterclaim ¶28 and Amended Counterclaim ¶40; Exhibit D, at p. 3; January 18, 2007 report of investigation, a redacted copy attached hereto as Exhibit F.  In their letter, they explained that a full and complete investigation revealed no evidence to substantiate her allegations.  Counterclaim, ¶28 and Amended Counterclaim ¶40; Exhibit D, at pp. 3-4.  This letter expressly confirmed GE's plans to terminate Ms. Koeck's employment.  Specifically, they noted that the investigation uncovered "widespread dissatisfaction with [Ms. Koeck's] job performance," which provided "ample justification for [GE C&I] to take employment action."  Exhibit D, at p. 4; Exhibit F, at pp. 1-2.  In a paragraph titled "<u>Plans for Termination based on Performance</u>," they noted that "the predominant view that emerged from interviews was that [Ms. Koeck] lacked depth in commercial law, reliability, and

---

[2]  Since Ms. Koeck's Ombuds Complaint includes GE's confidential, privileged, proprietary and trade secret information, GE has redacted certain portions of it in order to prevent further disclosure of GE's privileged and protected information.

follow-through, and that [Ms. Koeck was] unable to forge meaningful and constructive relationships or work well as part of the C&I legal team."  Exhibit D, at p. 4; Exhibit F, at p. 3. Messrs. Nordstrom and Eglash also noted that they found the evidence "insufficient to support [her] claim that [her] planned separation was motivated by [her] Latin American heritage." Exhibit D, at p. 4 (emphasis added by ALJ); Exhibit F, at p. 2.  Finally, in their "Conclusion" section, Messrs. Nordstrom and Eglash wrote that they "do not see a nexus between [the intemperate and insensitive] remarks and the plans to separate [Ms. Koeck] from GE for stated verified performance reasons."  Exhibit D, at p. 4 (emphasis added by ALJ); Exhibit F, at p. 3. Apparently on that same day, Ms. Koeck called Mr. Nordstrom and asked why he had decided to terminate her employment.  Exhibit D, at p. 4.  Mr. Nordstrom allegedly replied that it was "never" his decision to fire her, "he was not involved in that decision," he was not in a position to fire her anyway, and Ms. Harris would contact her to discuss the matter further.  Exhibit D, at p. 4.

### E.  Ms. Koeck's Meetings With Ms. Harris To Effectuate The Termination.

On January 24, 2007, Ms. Harris allegedly called Ms. Koeck at home and instructed her "to return to the office the next day to begin transitioning [her] duties to other attorneys." Exhibit D, at p. 4.  On January 25, 2007, Ms. Koeck met with Ms. Harris as instructed and Ms. Harris presented her with two letters.  Exhibit D, at p. 4.  One letter, dated January 24, 2007, references the other, which is dated November 29, 2006.[3]  Exhibit D, at p. 4.  In the January

---

[3]     In the attached November letter, Ms. Harris wrote, "As we have discussed, we are disappointed that your job performance has not been up to the level we expected from an attorney with the background and experience you indicated you had when you were hired.  Pursuant to our discussion today, your employment with GE will end effective December 8, 2006.  You will be removed from payroll on that date."  ALJ Order, at pp. 4-5.

letter, Ms. Harris wrote, "As the attached letter indicates we were scheduled to have a final discussion on your employment status on November 29, 2006.  Pursuant to our discussion today, your employment with GE will be terminated.  You will be removed from payroll effective January 26, 2007."  Exhibit D, at p. 4.

## III.    PROCEDURAL HISTORY

On April 23, 2007, 95 days after Ms. Koeck received the January 18, 2007 letter confirming the plans for termination, Ms. Koeck first contacted OSHA claiming that she had been terminated in retaliation for her alleged "whistleblowing."  On June 25, 2007, after completing a full investigation and affording Ms. Koeck, who was represented by attorneys from the law firm of Cotchett, Pitre & McCarthy, multiple opportunities to rebut the undisputed facts, OSHA dismissed Ms. Koeck's claim as barred by SOX's 90-day statute of limitations.  OSHA stated:  "[Ms. Koeck] filed the complaint on the 95th day after Respondents unequivocally addressed her concerns about threats and plans to terminate her employment based on performance."  Secretary of Labor's Findings, dated June 25, 2007, attached hereto as Exhibit G, at p. 2.

On July 24, 2007, Ms. Koeck filed an appeal with John Vittone, Chief Administrative Law Judge for the U.S. Department of Labor ("DOL").  Ms. Koeck then filed a Motion for Summary Decision and GE filed a Cross-Motion for Summary Decision with the ALJ.  On March 13, 2008, the ALJ issued a Recommended Summary Decision and Order Dismissing the Complaint, finding that Ms. Koeck did not timely file her SOX Complaint.  The ALJ reasoned that in order for the complaint to be considered timely, GE must have communicated its termination decision no earlier than January 23, 2007, and the ALJ found that GE communicated its decision by January 18, 2007, at the latest.  Exhibit D, at p. 6.

On March 21, 2008, Ms. Koeck filed a Petition for Review of the ALJ's Recommended Summary Decision and Order Dismissing the Complaint with the Department of Labor Administrative Review Board ("ARB").  After both sides had completed their respective briefings, Ms. Koeck filed a "Notice of Intention to File Action for De Novo Review in Federal Court," [4] and on July 16, 2008, Ms. Koeck filed her Counterclaim with this Court.  As a result, on August 28, 2008, the ARB issued a Final Decision and Order of Dismissal dismissing Ms. Koeck's appeal.

On July 18, 2008, Ms. Koeck filed a pro se Complaint in Fairfax County Circuit Court against Joseph W. Cotchett, the law firm of Cotchett, Pitre & McCarty, and John Doe in which she asserted claims of legal malpractice and breach of contract, and then filed an amended version of that Complaint on September 20, 2008 [5] (Malpractice Complaint").  See Exhibit H.  In the Malpractice Complaint, Ms. Koeck alleges that "Defendants failed to timely file [on Ms. Koeck's behalf] the whistleblower retaliation complaint under the Sarbanes-Oxley Act with the United States Department of Labor . . . ." and that "Defendants Cotchett and Chapin failed to adequately represent the interests of their client, Plaintiff Koeck, by missing the filing deadline." See Exhibit H, at ¶¶27, 39.  Ms. Koeck's clear admissions on the issue of timeliness corroborate

---

[4]     According to SOX's 180-day rule, "[i]f the [ARB] has not issued a final decision within 180 days of the filing of the complaint, and there is no showing that there has been delay due to the bad faith of the complainant, the complainant may bring an action at law or equity for de novo review in the appropriate district court of the United States, which will have jurisdiction over such an action without regard to the amount in controversy."  29 C.F.R. § 1980.114(a).  As stated in further detail infra, such claims, even if filed in district court, are still subject to arbitration.

[5]     Like her other submissions to the Department of Labor and this Court, Ms. Koeck's original Malpractice Complaint and the exhibits attached to it improperly disclosed GE's confidential, privileged, proprietary and trade secret information.  At GE's insistence, Ms. Koeck's attorneys had the original complaint retroactively filed under seal and then filed an amended version, which is attached as Exhibit H.

the findings of OSHA and the Administrative Law Judge and necessitate the dismissal of her

SOX counterclaim.

## IV.     ARGUMENT

### A.     The Court Should Dismiss Ms. Koeck's Counterclaims Because They Are Covered By Her ADRP Agreement.

The Federal Arbitration Act ("FAA") provides that agreements to resolve disputes by

arbitration "shall be valid, irrevocable and enforceable, save upon such grounds as exist at law or

in equity for the revocation of any contract."  9 U.S.C. § 2.  The Supreme Court has instructed

that questions of arbitrability must be evaluated with a "healthy regard for the federal policy

favoring arbitration" and that, "as a matter of federal law, any doubts concerning the scope of

arbitrable issues should be resolved in favor of arbitration."  Moses H. Cone Mem'l Hosp. v.

Mercury Constr., 460 U.S. 1, 24-25 (1983); see also Dean Witter Reynolds, Inc. v. Byrd, 470

U.S. 213, 218 (1985) ("the [Arbitration] Act leaves no place for the exercise of discretion by a

district court, but instead mandates that district courts shall direct the parties to proceed to

arbitration on issues as to which an arbitration agreement has been signed").  Under the FAA,

this Court need only determine that an agreement to arbitrate exists between the parties and that

Ms. Koeck's claims are within the scope of the arbitration agreement.  AT&T Techs. v.

Commc'n Workers of Am., 475 U.S. 643, 649-50 (1986); Gibbs v. PFS Invs., Inc., 209 F. Supp.

2d 620, 625 (E.D. Va. 2002) (Beach Smith, J.).

### 1.     Ms. Koeck Agreed To Be Bound By The ADRP Agreement.

As a condition of her employment with GE, Ms. Koeck indisputably consented to the

arbitration provision.  Her consent is evidenced by her execution of both her Acknowledgement

of Conditions of Employment (Exhibit A, signed by Ms. Koeck on December 14, 2005, before

her January 3, 2005 start date) and the ADRP Policy Agreement (Exhibit B, signed by Ms.

Koeck on her January 3, 2006 start date), as well as her agreement to use GE C&I's Alternate

Dispute Resolution Program as the exclusive means to resolve certain legal claims related to her

employment.  See Exhibit A ("I acknowledge that the offer of employment made to me is

contingent upon meeting all employment requirements, including but not limited to the

following: . . . . I have reviewed and received a copy of GE Consumer & Industrial's 'Alternate

Dispute Resolution Policy.'  I agree to resolve disputes in accordance with the terms of GE

Consumer and Industrial's Alternate Dispute Resolution Program"); Exhibit B ("I understand

and agree that, as a condition of my being hired, I shall use the GE Consumer & Industrial

Alternate Dispute Resolution Program (ADRP) as the exclusive means to resolve certain legal

claims related to my employment" and that "I waive the right to pursue in court 'covered

claims,' as defined by Section II(L) of ADRP Policy").

Under Kentucky law, applicable here because Ms. Koeck worked in Louisville,

Kentucky, "[a]greements to arbitrate as a condition of employment constitute consideration and

are enforceable under the FAA. . . . [E]ven if the arbitration agreement was not a condition of

employment, an arbitration clause requiring both parties to submit equally to arbitration

constitutes adequate consideration."  Kruse v. AFLAC Int'l, Inc., 458 F. Supp. 2d 375, 385 (E.D.

Ky. 2006); see also Shadeh v. Circuit City Stores, Inc., 334 F. Supp. 2d 938, 940 (W.D. Ky.

2004) ("The Supreme Court has held that agreements to arbitrate employment disputes as a

condition of employment are generally enforceable under the FAA.").  Likewise, by continuing

her employment with GE after she signed it, Ms. Koeck assented to be bound the terms of the

ADRP Agreement.  See generally Cent. Adjustment Bureau, Inc. v. Ingram Assocs., Inc., 622

S.W.2d 681, 686 (Ky. App. Ct. 1981) (holding that by signing covenants not to compete shortly

after they were employed and continuing their employment with company thereafter, appellees

assented to be bound by covenants and could not now be heard to deny their validity).

### 2.   Ms. Koeck Agreed To Arbitrate Her Claims.

Ms. Koeck's ADRP Agreement with GE plainly constitutes an agreement to arbitrate the

SOX claim contained in her Counterclaim and Amended Counterclaim, which alleges that GE

terminated her employment in "retaliation" for alleged protected "whistleblowing" activity in

violation of SOX.  Counterclaim, ¶¶46, 52; Amended Counterclaim ¶¶61, 62.  The Agreement

also indisputably covers Ms. Koeck's newly asserted claims for common law retaliation and

wrongful discharge, alleging she was retaliated against and wrongfully terminated for "engaging

in protected activity."  Amended Counterclaim, ¶¶71-73, 79.  These claims fall squarely within

the scope of the parties' ADRP Agreement because the agreement covers "employment-related

claims against the Company . . . under any municipal, state, or federal statute," and explicitly

covers "[r]etaliation claims for legally protected activity, and/or for whistleblowing."  Exhibit D,

at p. 7; see also Exhibit C, at p. 7.  Accordingly, under the plain language of the parties' ADRP

Agreement, the claims asserted in Ms. Koeck's Counterclaim and Amended Counterclaim are

subject to mandatory arbitration.  Even if there were room for doubt (which there is not), "[a]ny

doubts regarding the scope of the arbitration agreement should be resolved in favor of

arbitration."  Moses H. Cone Mem'l Hosp., 460 U.S. at 24-25; Blumenthal-Kahn Elec. Ltd. v.

Am. Home Assurance Co., 236 F. Supp. 2d 575, 579 (E.D. Va. 2002) (Ellis, J.) (quoting the

same).  Indeed, arbitration should not be denied "unless it may be said with positive assurance

that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."

AT&T Techs., 475 U.S. at 650; Blumenthal-Kahn Elec. Ltd., 236 F. Supp. 2d at 580 (quoting the

same).

### 3.    Ms. Koeck's SOX Claim Is Arbitrable.

The U.S. Supreme Court has repeatedly held that claims arising under federal statutes

may be subject to an agreement to arbitrate:

> It is by now clear that statutory claims may be the subject of an
> arbitration agreement, enforceable pursuant to the FAA.  Indeed, in
> recent years we have held enforceable arbitration agreements
> relating to claims arising under the Sherman Act, 15 U. S. C. §§ 1-
> 7; § 10(b) of the Securities Exchange Act of 1934, 15 U. S. C. §
> 78j(b); the civil provisions of the Racketeer Influenced and
> Corrupt Organizations Act (RICO), 18 U. S. C. § 1961 et seq.; and
> § 12(2) of the Securities Act of 1933, 15 U. S. C. § 77l(2). See
> Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473
> U. S. 614, 87 L. Ed. 2d 444, 105 S. Ct. 3346 (1985);
> Shearson/American Express Inc. v. McMahon, 482 U.S. 220, 96 L.
> Ed. 2d 185, 107 S. Ct. 2332 (1987); Rodriguez de Quijas v.
> Shearson/American Express, Inc., 490 U.S. 477, 104 L. Ed. 2d
> 526, 109 S. Ct. 1917 (1989).   In these cases we recognized that
> "[b]y agreeing to arbitrate a statutory claim, a party does not forgo
> the substantive rights afforded by the statute; it only submits to
> their resolution in an arbitral, rather than a judicial, forum."
> Mitsubishi, 473 U.S., at 628.

Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26 (1991).

With this clear mandate, federal courts have routinely held that SOX claims, such as the

Counterclaim asserted by Ms. Koeck, are to be arbitrated under employment agreements similar

to the ADRP Agreement.  See, e.g., Guyden v. Aetna, Inc., No. 06-4954, 2008 WL 4426478 (2d

Cir. Oct. 2, 2008) (affirming decision dismissing plaintiff's SOX whistleblower retaliation claim

in favor of arbitration); Mozingo v. S. Fin. Group, Inc., 520 F. Supp. 2d 725, 733 (D.S.C. 2007)

("Plaintiff's cause of action pursuant to Sarbanes-Oxley is arbitrable"); Boss v. Salomon Smith

Barney, Inc., 263 F. Supp. 2d 684, 685 (S.D.N.Y. 2003) (holding that there was "nothing in the

text of the statute or the legislative history of the Sarbanes-Oxley act evincing intent to preempt

arbitration of claims under the act. Nor is there an inherent conflict between arbitration and the statute's purposes. Accordingly, Boss's claims are arbitrable.").[6]

The Guyden decision is instructive, particularly given Ms. Koeck's desire for publicity and efforts to litigate her claims and actions in the press.  In reaching its holding that SOX claims are subject to arbitration, the Court of Appeals for the Second Circuit rejected the plaintiff's argument that one of the underlying purposes of the SOX whistleblower provision is to publicize alleged corporate misconduct and that arbitration would defeat that purpose.  Guyden, 2008 WL 4426478, at *4-5.  Instead, the court found that "the primary purpose of the statute is to provide a private remedy for the aggrieved employee, not to publicize alleged corporate misconduct."  Id. at *5.  The Court of Appeals further reasoned that, "[t]ellingly, and further undermining Guyden's argument that the public purpose of SOX should preclude arbitration, both Houses of Congress, acting separately, rejected versions of SOX that would have prohibited mandatory arbitration of whistleblower claims."  Id. (citing S.2010, 107th Cong. § 1514A(d)(2) (March 12, 2002 version) ("No employee may be compelled to adjudicate his or her rights under this section pursuant to an arbitration agreement."); H.R. 4098, 107th Cong. § 1514A(d)(2) (Apr. 9, 2002 version) (same); S. Rep. No. 107-146, at pt. V (May 6, 2002) (reporting unanimous vote in favor of amendment that "removed the provision dealing with arbitration agreements").  Finally, the Court of Appeals recognized that while arbitration is more private than litigation, this does not

---

[6]     See also United States ex rel. Wilson v. Kellogg Brown & Root, Inc., 525 F.3d 370, 381-83 (4th Cir. 2008) (retaliation claims under False Claims Act are subject to arbitration); Hill v. Peoplesoft USA, Inc., 412 F.3d 540, 542, 545 (4th Cir. 2007) (Title VII retaliation claims are subject to arbitration); Aleman v. Chugach Support Servs., 485 F.3d 206, 208, 219 (4th Cir. 2007) (Title VII discrimination claim subject to arbitration); Murray v. United Food & Commercial Workers Int'l Union, 289 F.3d 297, 301 (4th Cir. 2002) ("It is settled that the provisions of the FAA, and its policy favoring the resolution of disputes through arbitration, apply to employment agreements to arbitrate discrimination claims brought pursuant to federal statutes, including Title VII of the Civil Rights Act.").

undermine the statutory purpose of whistleblower protection, which is to provide a strong compensatory mechanism for employees subjected to adverse employment action as a result of their whistleblowing conduct.  Guyden, 2008 WL 4426478, at *6.

The Department of Labor, the agency responsible for investigating SOX claims, also favors arbitration.  Indeed, the Secretary of Labor submitted a brief as amicus curiae to the Guyden court, attached hereto as Exhibit I, in which it argued that the District Court correctly concluded that SOX whistleblower complaints are subject to compulsory arbitration pursuant to individual arbitration agreements.  Exhibit I, at pp. 7-8, 11-15.  The Secretary of Labor argued that:  (1) there is no demonstrable congressional intent against mandatory arbitration of SOX whistleblower claims; (2) no inherent conflict exists between the purposes of SOX and the arbitration of Section 806 claims; (3) the Supreme Court has repeatedly upheld arbitration agreements under various statutes, despite objections that arbitration would undermine public interest; and (4) Guyden provided no plausible support for her conclusion that whistleblowers will be dissuaded from asserting claims, and the SOX's deterrent features would be compromised because an employee must pursue her remedies in arbitration.  Exhibit I, at pp. 12-14.

### 4.    Ms. Koeck's Employment Related Claims For Retaliation And Wrongful Discharge Also Are Arbitrable.

Courts have repeatedly upheld GE's arbitration agreement and compelled arbitration where employees have sought to bring claims related to their employment with GE in court.  See e.g., Amaram v. GE Fin. Assurance Holdings, Inc., No. 3:04CV476 (JRS), slip op. at 1, 7 (E.D. Va. Sept. 30, 2004) (directing parties to proceed to arbitration according to terms of arbitration agreement because plaintiff's discrimination claims fell squarely within valid agreement to arbitrate); see also Gonzalez v. GE Group Adm'rs, Inc., 321 F. Supp. 2d 165, 170, 172-73 (D.

Mass. 2004) (compelling arbitration on plaintiff's discrimination, sexual harassment and retaliation claims because plaintiff's claims fell within scope of valid arbitration agreement and GE's participation in administrative proceedings with EEOC and Massachusetts Commission Against Discrimination did not waive GE's right to arbitrate); Quinney v. Gen. Elec. Polymershapes, No. 3:04cv1058P, 2004 WL 1782554, at *2, 3 (N.D. Tex. July 30, 2004) (dismissing plaintiff's claims with prejudice because employment-related disputes were covered by valid agreement to arbitrate); Shelby v. General Electric Co., No. 03-F-106-N (MEF), slip op. at 7 (M.D. Ala. Nov. 6, 2003) (compelling arbitration of discrimination and retaliation claims). The circumstances here compel the same result.

Arbitration of Ms. Koeck's employment-related claims asserted under Kentucky common law is warranted here.  Kentucky courts recognize that, in the presence of a valid arbitration agreement between an employer and employee, claims arising out of the employment relationship are properly submitted to arbitration, subject to the terms of the agreement.  See, e.g., Walker v. MDM Svcs. Corp., 997 F. Supp. 822, 825 (W.D. Ky. 1998) (granting motion to compel arbitration on claims for retaliatory discharge, as such claims were covered by employee's arbitration agreement); Hill v. Hilliard, 945 S.W.2d 948, 951 (Ky. Ct. App. 1996) (affirming lower court ruling that former employee's claim for retaliation, inter alia, arose from the employment relationship and was thus subject to mandatory arbitration).  Ms. Koeck's claims for retaliation and wrongful discharge are not properly before this court, and thus should be submitted to arbitration.

Accordingly, this Court should dismiss Ms. Koeck's Counterclaim and Amended

Counterclaims and compel Ms. Koeck to commence arbitration if she wishes to pursue her SOX,

wrongful discharge or retaliation claims.[7]

**B.     The Court Should Dismiss Ms. Koeck's SOX Counterclaim Because Ms. Koeck Admits And The Facts Further Demonstrate That Ms. Koeck Failed To Timely File Her SOX Complaint.[8]**

This Court should dismiss Ms. Koeck's SOX Counterclaim because, as both OSHA and

the ALJ concluded and Ms. Koeck admits, Ms. Koeck failed to timely file her SOX Complaint.

**1.     Ms. Koeck Admits That Her SOX Complaint Was Not Timely Filed.**

As a preliminary matter, Ms. Koeck's SOX counterclaim must be dismissed because Ms.

Koeck has admitted in other court pleadings that her SOX Complaint was not timely filed with

the DOL.  More specifically, on July 18, 2008, Ms. Koeck filed her original Malpractice

Complaint against Joseph W. Cotchett, the law firm of Cotchett, Pitre & McCarty and John Doe

in which she asserted claims of legal malpractice and breach of contract, and then filed an

amended version on September 26, 2008.  See Exhibit H.  As explained above, Ms. Koeck's

---

[7]     By contrast, the claims that GE has asserted against Ms. Koeck in this action constitute "Excluded Claims" under the terms of ADRP Agreement and, therefore, are not subject to mandatory arbitration.  More specifically, GE is not required to arbitrate "claims related to GE's 'Employee Innovation and Proprietary Information Agreement,' or an alleged breach of an employee's non-competition, non-solicitation, fiduciary or confidentiality obligations."  Exhibit C, at p. 8.  The fact that Ms. Koeck's claim is asserted as a counterclaim has no bearing on whether this Court should compel arbitration, as courts routinely dismiss counterclaims based on valid agreements to arbitrate.  See, e.g., JTH Tax, Inc. v. Lee, 514 F. Supp. 2d 818, 826 (E.D. Va. 2007) (Beach Smith, J.) (noting that the court previously granted plaintiff's motions to stay proceedings and compel arbitration of defendant's counterclaim where all four counts of defendant's counterclaim were subject to arbitration in accordance with terms of valid arbitration agreement).

[8]     If this Court concludes that Ms. Koeck's Counterclaim and Amended Counterclaim are subject to mandatory arbitration, then the timeliness of her claims, of course, becomes an issue for the arbitral tribunal to decide rather than the Court.

amended Malpractice Complaint alleges that "Defendants failed to timely file [on Ms. Koeck's behalf] the whistleblower retaliation complaint under the Sarbanes-Oxley Act with the United States Department of Labor . . . ." and that "Defendants Cotchett and Chapin failed to adequately represent the interests of their client, Plaintiff Koeck, by missing the filing deadline." See Exhibit H, at ¶¶27, 39.  Given that the only issue for the Court to consider in Ms. Koeck's Counterclaim is whether Ms. Koeck timely filed her SOX Complaint, Ms. Koeck's admission in the Malpractice Complaint that the SOX Complaint was not timely filed necessitates the dismissal of her that counterclaim.[9]

> **2.      Even Ignoring Ms. Koeck's Admission, Ms. Koeck Cannot Establish That Her SOX Complaint Was Timely Filed.**

SOX requires that alleged whistleblower complaints be commenced "not later than 90 days after the date on which the violation occurs."  SOX § 806(a), PL 107-204.  The triggering event for a SOX civil whistleblower complaint is "when the discriminatory decision has been both made and communicated to the Complainant."  29 C.F.R. § 1980.103(d).  From that date, a Complainant has 90 days within which to file a SOX Complaint.

ALJ and ARB decisions regarding timeliness consistently have applied a reasonable and practical standard, recognizing repeatedly that the triggering date under the regulation is not the effective date of the adverse action but, rather, is the date on which the employee is on notice that an adverse employment action will occur.[10]  For example, in Levi v. Anheuser-Busch Co.,

---

[9]     Interestingly, Ms. Koeck claims that "[a]s a result of the above referenced failures by the Defendants, Plaintiff's suit was dismissed."  Exhibit H, at ¶44.  Accordingly, Ms. Koeck recognizes that her failure to timely file her SOX Complaint requires the dismissal of her SOX claim with prejudice.

[10]    This Court properly should be guided by the standards adopted in the ALJ and ARB's decisions on SOX whistleblower retaliation claims.  The Fourth Circuit recently ruled that "Congress explicitly delegated to the Secretary of Labor authority to enforce §

2006-SOX-37, at p. 6 (ALJ May 3, 2006), the ALJ concluded that the trigger date for the 90-day

statute of limitations was the date on which the employee received notice of a suspension with

intent to discharge, not the actual date of discharge.  The ARB later affirmed this decision and

held that "the ALJ correctly concluded that the claim accrued on February 14, 2003, when Levi

had notice as opposed to when the discharge became final."  Levi v. Anheuser-Busch Co., ARB

Case Nos. 06-102, 07-020, 08-006, at pp. 2, 10 (ARB Apr. 30, 2008).  Likewise, with regard to

claims based on termination of employment, cases hold that the 90-day clock "begins to run

when the employee is made aware of the employer's decision to terminate him or her even when

there is a possibility that the termination could be avoided."  Thus, in Lawrence v. AT&T Labs,

2004-SOX-65, at p. 6 (ALJ Sept. 9, 2004), the tribunal concluded that the 90-day limitations

period was triggered when the complainant received a letter informing her that she had been

selected for involuntary termination unless she was placed in another position by certain date,

even though subsequent communications were exchanged by and among the employer,

complainant, and her attorney, regarding the effective date of such termination.  See also Rollins

v. Am. Airlines, Inc., ARB Case No. 04-140, 2004-AIR-9 (ARB Apr. 3, 2007), at p. 4

(concluding that complainant received final and unequivocal notice that respondent decided to

terminate his employment when respondent issued complainant letter offering choice of

reassignment, voluntary resignation or involuntary termination; "the possibility that

[complainant] could have avoided the effects of the [letter] by resigning voluntarily or accepting

employment in another division does not negate the effect of the [letter]'s notification of

---

1514A by formal adjudication, see 18 U.S.C. § 1514A(b), and the Secretary has
delegated her enforcement authority to the ARB, see 67 Fed. Reg. 64,272, 64,273 (Oct.
17, 2002).  Thus, we afford deference to the ARB's interpretation of § 1514A of the
Sarbanes-Oxley Act."  Welch v. Chao, 536 F.3d 269, 276 n.2 (4th Cir. 2008).

[respondent's] intention to terminate [complainant's] employment."); <u>Carter v. Champion Bus, Inc.</u>, 2005-SOX-23, at p. 2 (ALJ Mar. 17, 2005) (holding that discussions regarding severance or possible reinstatement did not change fact that statute of limitations began to run when complainant was first made aware of decision to terminate); <u>Flood v. Cendant Corp.</u>, 2004-SOX-16, at p. 2 (ALJ Feb. 23, 2004) (concluding that statute of limitations for filing SOX complaint began to run on date complainant was informed by e-mail that unless he found another job within company by date certain, his employment would be terminated within weeks; triggering date "is not altered in situations where the notice of termination indicated that an employee could continue his or her employment if able to secure an alternative position within the company."). These cases make clear that the triggering date is not changed where the notice of termination indicated that the employee could continue his or her employment if the employee is able to obtain another position within the company.[11]  Accordingly, it is well-settled that the statutory period can, and often does, begin to run before the actual date of discharge or the final termination meeting.

Here, Ms. Koeck plainly knew of her impending employment termination on November 29, 2006 when she filed her Ombuds complaint alleging that she believed she was "being retaliated against including being threatened with losing my job . . . ."  Counterclaim, ¶27 and Amended Counterclaim, ¶39 ; Exhibit D, at p. 3; Exhibit E.  In any event, however, Ms. Koeck was undeniably made aware of GE's intention to terminate her employment by January 18, 2007,

---

[11]  GE also did not need to provide Ms. Koeck with a specific termination date in order to constitute "unequivocal notice."  At least one ARB decision held that the statutory period was triggered before the complainant received a specific termination date.  <u>See</u> <u>Rollins v. American Airlines, Inc.</u>, ARB Case No. 04-140, 2004-AIR-9 (ARB Apr. 3, 2007), at p. 4 (concluding that complainant received final and unequivocal notice that respondent decided to terminate his employment when respondent issued complainant letter offering choice of reassignment, voluntary resignation or involuntary termination).

at the absolute latest, and, therefore, her SOX Complaint was not timely filed.  Specifically, on January 18, 2007, Ms. Koeck received a letter from GE lawyers Nordstrom and Eglash detailing the findings of their investigation, and confirming, in writing, GE's plan to proceed with the planned termination of her employment.

Indeed, as the ALJ correctly found, the letter contains repeated references to Ms. Koeck's planned separation from GE.  Exhibit D, at pp. 5, 6.  More specifically, the letter includes references to the "Plans for Termination based on Performance," the "planned separation," and the "plan to separate [Ms. Koeck] from GE."  Id.  This letter left absolutely no room for doubt that the decision to terminate her employment had been made.  As the ALJ correctly ruled, "[a] reasonable person receiving this letter would have known that Respondents had decided to terminate her.  The repeated references to Complainant's 'planned separation' resolve any ambiguity that might have resulted from considering only one of these references in a vacuum."  Exhibit D, at p. 6.  Furthermore, it is evident that "Complainant understood from this letter that a decision to terminate her employment has been made, for shortly after receiving this letter she called Mr. Nordstrom and asked him why he had decided to terminate her employment."[12]  Id.  As the ALJ specifically found:

> The parties' submissions clearly reveal disagreements about the details of the events leading up to [Ms. Koeck's] termination.

---

[12]   Ms. Koeck may argue that her January 18, 2007 conversation with Mr. Nordstrom cast doubt in her mind about whether her employment had been terminated and, therefore, the January 18, 2007 letter did not in fact provide her with "final definitive and unequivocal notice," but this is incorrect.  Mr. Nordstrom allegedly stated merely that "it was 'never' his decision to fire [her]" and that "he was not involved in the decision."  Exhibit D, at p. 4.  Mr. Nordstrom did not say that the decision had not been made by someone else.  In fact, as the ALJ correctly noted, Ms. Koeck does not "contend that he indicated during this conversation that her belief that she was being terminated was incorrect."  Exhibit D, at p. 6.  Accordingly, Mr. Nordstrom's conversation with Ms. Koeck did not call into doubt the finality of the decision to terminate her employment.

> However, the parties do not dispute the content, context, and receipt dates of documents that establish [Ms. Koeck's] filing as untimely.  Even accepting [Ms. Koeck's] alleged version of the facts as true, I find her complaint untimely.

Exhibit D, at p. 2.  Likewise, as OSHA concluded following its investigation, the January 18, 2007 letter "unequivocally addressed [Ms. Koeck's] concerns about threats and <u>plans to terminate her employment</u> based on performance."  Exhibit D, at p. 2 (emphasis added).

Having had a full and complete opportunity to litigate these issues before the ALJ, Ms. Koeck should be bound by the ALJ's factual determination.  In fact, the Secretary of Labor has recommended collateral estoppel as an appropriate remedy when a complainant has brought her SOX claim to federal court after the ALJ has issued an adverse decision on the facts before it.  More specifically, the Secretary of Labor commented:

> This statutory structure creates the possibility that a complainant will have litigated a claim before the agency, will receive a decision from an administrative law judge, and will then file a complaint in Federal court while the case is pending on review by the Board. . . . The Secretary believes that it would be a waste of the resources of the parties, the Department, and the courts for complainants to pursue duplicative litigation.  The Secretary notes that the courts have recognized that, when a party has had a full and fair opportunity to litigate a claim, an adversary should be protected from the expense and vexation of multiple lawsuits and that the public interest is served by preserving judicial resources by prohibiting subsequent suits involving the same parties making the same claims.  <u>See</u> <u>Montana v. United States</u>, 440 U.S. 147, 153 (1979).  **When an administrative agency acts in a judicial capacity and resolves disputed issues of fact properly before it that the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply the principles of issue preclusion (collateral estoppel) or claim preclusion (res judicata) on the basis of that administrative decision.**  <u>See</u> <u>University of Tennessee v. Elliott</u>, 478 U.S. 788, 799 (1986) (citing <u>United States v. Utah Construction and Mining Co.</u>, 384 U.S. 394, 422 (1966)).  Therefore, the Secretary anticipates that Federal courts will apply such principles if a complainant brings a new action in Federal court following extensive litigation before the Department that has resulted in a decision **by an administrative law judge** or the Secretary.

69 Fed. Reg. 52104, 52111 (Aug. 24, 2004) (emphasis added).

Whether Ms. Koeck is formally bound by the ALJ's decision, the ALJ's decision is certainly entitled to substantial deference and in any event that decision is unquestionably correct. Thus, Ms. Koeck's failure to file a claim within 90 days of the date on which the decision clearly had been communicated renders her SOX claim untimely and, therefore, beyond further review.[13]  Accordingly, Ms. Koeck's SOX Counterclaim should be dismissed.

**C.     The Court Should Dismiss Ms. Koeck's Counterclaims Under Kentucky Law Because Such Claims Are Preempted and Barred by the Statute of Limitations.**

Under Kentucky law, Ms. Koeck cannot properly rely on allegations of retaliation in violation of public policy to support an additional claim for wrongful termination based on "whistleblowing."  Clear Kentucky precedent provides that "[w]here [a] statute both declares the unlawful act and specifies the civil remedy available to the aggrieved party, the aggrieved party is limited to the remedy provided by the statute." Grzyb v. Evans, 700 S.W.2d 399, 401 (Ky. 1985).  In other words, if a state statute proscribes a certain act and provides a remedy under the statute for those violations, that statute precludes any common law claims based on the same theory of liability.  See, e.g., Maiden v. N. Am. Stainless, L.P., 125 Fed. Appx. 1, 4-5 (6th Cir. 2004) (retaliatory discharge action was preempted by Kentucky's OSHA statute); Wiseman v. Whayne Supply Co., 359 F. Supp. 2d 579, 592 (W.D. Ky. 2004) (claims for wrongful retaliatory discharge and intentional inflection of emotional distress related to alleged discrimination were preempted by statutes providing for specific remedies for such claims); Benningfield v. Pettit

---

[13]     That Ms. Koeck might have been transitioning or completing matters on which she had been working is of no consequence to the statute of limitations discussion.  As the great weight of authority makes clear, the triggering event is the communication of the decision, not the effective date of that decision.

Envtl., Inc., 183 S.W.3d 567, 571 (Ky. Ct. App. 2006) (Kentucky statute forbidding firing of employee for filing complaint with OSHA preempted wrongful discharge claim based on same theory of retaliation).

The KWA prohibits an employer from retaliating against an employee for engaging in certain protected conduct.  See Ken. Rev. Stat. Ann. § 61.101, et seq.  The statute provides that an employee alleging violation of the statute "may bring a civil action for appropriate injunctive relief or punitive damages, or both, within ninety (90) days after the occurrence of the alleged violation."  Id. at § 61.103(2).  Therefore, because the statute provides an employee with a specific remedy for violations of the unlawful act, an employee is precluded from seeking relief under the common law based on theories of retaliation or retaliatory wrongful discharge.  See Stone v. Schwartz, No. 96-2215, 1997 WL 565677, *1 (4th Cir. Sept. 12, 1997) ("Where the same statute both creates the public policy and structures the remedy, it preempts the field of its application.") (applying Kentucky law and citing Grzyb, 700 S.W.2d at 401).  Ms. Koeck is thus limited to seeking the relief set forth in the Kentucky statute, and cannot proceed with her common law claims.

Moreover, her claim under the KWA is also time-barred.  The statute of limitations under the KWA is 90 days after the occurrence of the alleged violation.  Ms. Koeck now attempts to circumvent the limitations period of not only SOX, but now the KWA, by pleading under common law claims derived from identical theories.  As described above, the time has long since passed for Ms. Koeck to pursue a claim against GE based on allegations of retaliation.  Her efforts to do so now are in plain violation of clear Kentucky precedent, and Ms. Koeck's claims must be dismissed.

V.      **CONCLUSION**

For all the foregoing reasons, Ms. Koeck's Counterclaim and Amended Counterclaim

should be dismissed.

Respectfully submitted,


*Of Counsel*:

MORGAN, LEWIS & BOCKIUS LLP
Barbara Van Gelder
1111 Pennsylvania Avenue, N.W.
Washington, D.C.  20004
(202) 739-5256
(202) 739-3001 (fax)

Sarah E. Bouchard
Anne E. Martinez
1701 Market Street
Philadelphia, PA  19103
(215) 963-5077/5718
(215) 963-5001 (fax)

_____/s/_____

Charles B. Wayne
Virginia Bar No. 24954
Elisha A. King
Attorneys for General Electric Company
DLA PIPER LLP (US)
500 8th Street, N.W.
Washington, D.C.  20004
(202) 799-4000
(202) 799-5000 (fax)
charles.wayne@dlapiper.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 15th day of October, 2008, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send notification of such filing (NEF) to the following:

Grant E. Morris
Law Offices of Grant Morris
1666 Connecticut Avenue, N.W.
Suite 310
Washington, D.C.  20009

Robert B. Nealon
Michael T. Pritchard
Jay I. Igiel
Nealon & Associates, P.C.
119 N. Henry Street
Alexandria, VA  22314

I also hereby certify that the foregoing was served by electronic mail on the following non-users:

David W. Sanford
Stefanie F. Roemer
Sanford, Wittels & Heisler, LLP
1666 Connecticut Avenue, N.W.
Suite 310
Washington, D.C.  20009

_____/s/_____
Charles B. Wayne
Virginia Bar No. 24954
Elisha A. King
Attorneys for General Electric Company
DLA PIPER LLP (US)
500 8th Street, N.W.
Washington, D.C.  20004
(202) 799-4000
(202) 799-5000 (fax)
charles.wayne@dlapiper.com