UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

_____

GENERAL ELECTRIC COMPANY,           )
                                    )
            Plaintiff,              )
                                    )
      v.                            )        Civil Action No. 1:08cv591 (TSE/JFA)
                                    )
ADRIANA KOECK,                      )
                                    )
            Defendant.              )
                                    )
_____)

**REPLY BRIEF IN SUPPORT OF**
**MOTION TO INTERVENE**

Bernabei & Wachtel, PLLC, a Washington, D.C. law firm ("Bernabei & Wachtel"), by counsel, respectfully submits its Reply Brief in support of its Motion to Intervene (Doc. No. 155) (Jan. 28, 2009), and to address several legal and factual inaccuracies and misrepresentations in Defendant Adriana Koeck's Memorandum of Law Opposing Motion to Intervene ("Koeck Opp.") (Doc. 158) (Jan. 29, 2009).

As set forth below, Ms. Koeck's opposition contains material omissions or misrepresentations, and fails to describe the full nature of her communications with Bernabei & Wachtel regarding their representation of her in this Court.  Ms. Koeck's opposition also mischaracterizes the nature and consequences of Bernabei & Wachtel's attorney lien.

**I.      Bernabei & Wachtel's Statutory Attorney Lien Attaches to Any Recovery**
**        that Ms. Koeck May Obtain from General Electric.**

As a threshold matter, this Court must find that Bernabei & Wachtel's statutory attorney lien attaches to any recovery that Ms. Koeck may obtain from General Electric ("GE"), regardless of how GE makes those payments.  Ms. Koeck's argument is entirely illogical, but

seems to be based on the provisions in Koeck's settlement agreement with GE that: "neither Ms. Koeck nor her counsel will receive any monetary recovery in connection with Ms. Koeck's SOX claims or with her defense in the matter before this Court" and that: "The parties shall bear their respective costs of suit and attorney's fees." See Koeck Opp. at 4-5. The implications are that (1) GE's settlement of Ms. Koeck's claims is allocated entirely to the Schaefer class action in the U.S. District Court for the District of Connecticut, and (2) GE's settlement check(s) will be issued solely to Ms. Koeck, without any separate check payable to her attorneys.

First, Ms. Koeck continues to be represented by local counsel in this action – Robert Nealon, Jay Igiel, and Michael Pritchard at Nealon & Associates. A Bernabei & Wachtel attorney drafted a contingency fee agreement between Ms. Koeck and Nealon and Ms. Koeck signed it on June 30, 2008. See D. Wachtel email to M. Pritchard with draft retainer agreement (June 30, 2008); M. Pritchard email to D. Wachtel (June 30, 2008) (attached and incorporated hereto as Exhibits 1-2). Under Ms. Koeck's reading of the settlement agreement, Nealon & Associates similarly would not be entitled to any recovery from her settlement, since that firm was not counsel of record in the Schaefer action in the U.S. District Court for the District of Connecticut. Ms. Koeck's retainer agreement with Nealon & Associates, like her agreement with Bernabei & Wachtel, provides that she will pay that firm a recovery "if the Client recovers moneys or property in this matter." See Ex. 1, Att. at ¶ 3 (emphasis added). It is highly likely that Nealon & Associates will be compensated out of GE's settlement payment to Ms. Koeck, regardless of how those payments are allocated or denominated. Otherwise, Nealon & Associates would have worked for six months for no compensation, which is illogical.

Moreover, a contingency fee payment comes out of the client's share of the settlement, and does not require a separate allocation of attorneys' fees as part of a settlement payment. In

other words, if a settlement is paid entirely to the client, then the attorneys are compensated from the payment to the client.

Further, Ms. Koeck's prior filings with this Court made clear that the Schaefer settlement "will address and settle the claims in this action."  See Koeck Mem., at 1 (Nov. 18, 2008) (Doc. No. 136) ("Final settlement and dismissal of the action pending in this Court must wait until the *Schaefer* settlement documents – which will address and settle the claims in this action – are executed.).  Thus, contrary to Ms. Koeck's arguments, the Schaefer settlement encompasses this litigation, not just the claims in the Connecticut class action.  Further, Ms. Koeck admitted that the Schaefer case "involved claims of systemic gender discrimination in pay and promotion." See Koeck Opp., at 5.  Yet, Ms. Koeck was employed at GE for less than one year, so any pay discrimination would have covered a short time period, since she did not apply for a promotion during her short tenure at GE.  Thus, it is questionable as to whether Ms. Koeck even qualified to be a class member in the Schaefer class action, and even if she did, any recovery from that class action would be quite low compared to the recovery that she sought through Bernabei & Wachtel's representation, i.e., damages arising from GE's termination of her employment.  Since Schaefer was not a wrongful termination case, any settlement that she may get pursuant to that class action would comprise only a small part of her total monetary claims against GE.

This Court should inquire into how Nealon & Associates are being compensated, in order to determine the validity of Ms. Koeck's argument.  This Court should further inquire as to how Ms. Koeck's settlement payment compares with those of the other class members in the Schaefer action, since a larger than average payment would indicate that Ms. Koeck and her attorneys, including her local counsel, are receiving extra compensation because of this case.

Second, a statutory attorney's lien attaches to the entire settlement, regardless of how the

settlement payment is denominated or allocated.  Under Ms. Koeck's theory, a client could evade

her responsibilities to her former attorneys by arranging with her new attorneys and the opposing

counsel to allocate the settlement payment entirely to the client.  This clearly is not the law, and

not unsurprisingly, Ms. Koeck fails to cite any legal authority in support of that remarkable

proposition.  This Court should find that an attorney's lien attaches to the client's recovery or

judgment, regardless of how such are characterized.  The purpose of an attorney lien is to prevent

a client from discharging a firm after the firm has substantially performed, in an attempt by the

client to not have to pay the firm for its legal services.  Here, nearly all the substantive pleadings

on Ms. Koeck's behalf in this Court were researched and drafted by Bernabei & Wachtel.[1]

Thus, this Court should find that Bernabei & Wachtel's statutory attorney lien attaches to

any and all payments that GE may make to Ms. Koeck, regardless of how those payments are

denominated or allocated.

## II.    Ms. Koeck Significantly Misrepresented the History of Her Representation by Bernabei & Wachtel.

This Court should further find that Ms. Koeck fundamentally misrepresented the history

of her representation by Bernabei & Wachtel – both by omitting key facts, and inaccurately

representing those few facts that she did choose to provide this Court.

### A.    Ms. Koeck Did Not Terminate Bernabei & Wachtel "For Cause."

The most egregious misrepresentation that Ms. Koeck makes to this Court is her repeated

assertion that Bernabei & Wachtel was somehow terminated "for cause."  Although Ms. Koeck

now claims that she terminated the firm on August 8, 2008, "due, *inter alia*, to Bernabei's (1)

failure to abide by Ms. Koeck's explicit instructions, (2) acting in the absence of Ms. Koeck's

---

[1] The movant has reason to believe that the pleadings filed by the Sanford firm were largely taken from pleadings previously filed by Bernabei & Wachtel for Ms. Koeck, either in the Department of Labor proceeding (*i.e.*, Koeck's opposition to GE's motion for summary judgment on Koeck's Sarbanes-Oxley claim), or from pleadings that Bernabei & Wachtel filed in this Court.

authority; [and] (3) failure to communicate with Ms. Koeck about her case," <u>see</u> Koeck Opp. at 3 ¶ 5, the termination letter that she cited makes <u>no</u> mention of any of these purported reasons. Instead, Ms. Koeck's termination letter says nothing more than that "I have decided to change DC legal counsel in the above-referenced matter." <u>See</u> Koeck Opp., Ex. B.

### (1)     Ms. Koeck Terminated Bernabei & Wachtel after the Firm Reminded Her of Her Financial Obligations.

In fact, the impetus for Ms. Koeck's August 8, 2008 termination letter appears to be that on the previous day, Bernabei & Wachtel had sent Ms. Koeck a letter regarding mediation and expert witness issues, which noted that (1) if Ms. Koeck wanted to retain an economic expert to calculate losses, she "alone will be responsible for compensating any expert you retain for his or her time." <u>See</u> L. Bernabei to A. Koeck, at 2 (Aug. 7, 2008) (attached and incorporated hereto as Exhibit 3). Bernabei & Wachtel then emphasized that Ms. Koeck owed the firm $2,806.32 in costs, and that the firm could withdraw if this payment was not made:

> I also want to emphasize that … you have a continuing obligation to pay Bernabei & Wachtel for the costs of your case. The total costs to date in your case are $2,806.32. I also note that the firm can, and will, withdraw from representation if you do not pay these costs in a timely manner.

<u>Id.</u> Finally, Bernabei & Wachtel noted that the firm had already incurred substantial attorney's fees under the retainer agreement with Ms. Koeck:

> In preparing for your mediation, I also want to emphasize that the retainer agreement gives us the option to receive payment from you at 40% of the settlement agreement <u>or</u> our hourly fees at market rates. Please note that, at this time, our hourly fees at market rates are approximately $189,000.00.

<u>Id.</u> The logical conclusion is that it was the firm's reminder to Ms. Koeck that she owed the firm $2,806.32 in costs, and that her retainer agreement with the firm obligated her to pay either a contingency fee, or a quantum meruit recovery at market rates, that motivated her, the very next day, to terminate the firm's representation of her in this action.

**(2)     Ms. Koeck's "Explicit Instructions" Improperly Directed Bernabei & Wachtel to Violate This Court's Orders.**

However, even if this Court were to consider Ms. Koeck's three new-found reasons for terminating Ms. Koeck, it must find that those purported reasons are pretextual and unsupported by the factual record.

Although Ms. Koeck identified three reasons for terminating Bernabei & Wachtel, <u>see</u> Koeck Opp. at 3 ¶ 5, these reasons are interrelated, and arise from the Stipulation that this Court encouraged the parties to enter into on July 25, 2008.  The Court signed that Stipulation, which required Ms. Koeck to release copies of the hard drives of her computer to GE for its review.

As this Court will recall, GE sought to have Ms. Koeck turn over all privileged and confidential documents that were in her possession.  <u>See</u> Motion for Preliminary Injunction (July 3, 2008).  At the July 10, 2008 hearing in this Court, the parties discussed a potential stipulation that would govern such documents, but were unable to reach an agreement.  When the parties reached this impasse, GE filed a motion for a temporary restraining order to prohibit Ms. Koeck from disclosing these documents to any third party other than the D.C. Bar counsel.  <u>See</u> Pls. Emergency Mot. for Temporary Restraining Order (July 15, 2008).

On July 25, 2008, this Court held a second hearing.  At that hearing, the Court made clear to both sides that it would order Ms. Koeck to turn over all documents she had taken with her from GE, whether or not her counsel agreed.   The parties reached a stipulation restricting Ms. Koeck's use and disclosure of documents, requiring her to turn over the hard drives, cancelled the hearing for the temporary restraining order, and this Court directed the parties to file the signed stipulation by 5 p.m. on that day.  <u>See</u> Order (July 25, 2008) (Doc. No. 83).[2]

On July 25, 2008, this Court entered the "Stipulation and Order" to which the parties had

---

[2]  Ms. Koeck was not at the hearing because she was tending to a sick child in Florida.

agreed.  <u>See</u> Stipulation and Order (July 25, 2008) (Doc. No. 87).  This court order expressly

stated that "Koeck agrees to give copies of all documents that she took from GE that remain in

her possession, custody or control to the Court and to GE.  Koeck shall, no later than July 25,

2008, make available to GE, for examination by a forensic computer expert of its choosing, two

copies of Koeck's computer hard drive."  <u>Id.</u> at 2 ¶ 3.

     Shortly after that hearing, also on July 25, 2008, the parties agreed to enter into mediation

to settle all claims.  This represented significant progress for Ms. Koeck in her case.

     Ms. Koeck's complaint that Bernabei & Wachtel somehow did not comply with her

"directives," or acted without her authority, arise from the foregoing sequence of events in which

this Court entered the Stipulation and Order requiring her to turn over the hard drive of her

computer to GE for forensic imaging.

     In fact, Ms. Koeck was unavailable to discuss these matters with Bernabei & Wachtel in

late July 2008, at a time when this Court was considering GE's request that Ms. Koeck be

required to turn over all paper and electronic documents and files in her possession that she took

from GE, because she was in Florida with a sick child.  On Sunday, July 27, 2008, Ms. Koeck

wrote to Lynne Bernabei to complain that the firm should not have agreed to turn over the hard

drives and should have contacted her "before deciding to turn over this evidence to GE."  <u>See</u> A.

Koeck emails with L. Bernabei, at 3 (July 27-28, 2008) (attached and incorporated hereto as

Exhibit 4).  Ms. Bernabei responded on Monday morning that:

> **The judge ordered us essentially to turn over the hard drives and let GE make copies.  We didn't have a choice.**  That's why it didn't matter what you wanted to do. . .
>
> That is why we entered into a stipulation.  **You were unavailable all day on Friday so we couldn't talk to you before the hearing or during the hearing.**
>
> Why don't you call us now, so we can discuss how to proceed. . . . **your insistence on doing things that the court will not allow us to do is very frustrating and upsetting**

**to the entire legal staff here.**

Id. at 2 (emphasis added).

Ms. Koeck responded by acknowledging that "I know you have been trying to reach me."

Id. at 1.  However, she then continued complaining that Bernabei & Wachtel should not have

"handed over *both* hard drives to GE … This really concerns me." Id.

Ms. Bernabei promptly responded by stating that:

> We had a hearing on Friday where we won both motions we argued.  I don't know how
> you could ask for anything more from us.  **You were totally unavailable during either**
> **of the hearings on Friday, or to talk to us before the hearings**, because your children
> were sick.
>
> Adriana, you simply have no understanding how litigation works, and don't understand
> how much we have done for you thus far in the litigation.  **If you want to do this case**
> **yourself, we would be happy to withdraw.**  I cannot understand why you second guess
> our every move, except that you don't understand how the litigation works and how a
> case such as this is litigated.
>
> We should talk later today.  If you want us to withdraw as your counsel, we need to
> discuss this immediately.  **I will not violate direct court orders on your behalf or on**
> **behalf of any client.**

Id. at 1 (emphasis added).

Thus, this Court should find that Bernabei & Wachtel's purported "refusal" to comply

with Ms. Koeck's "directives" was grounded in the fact that Ms. Koeck was repeatedly and

improperly demanding that the firm violate this Court's Stipulation and Order by refusing to turn

over all documents and hard drives in her possession.  Moreover, it was Ms. Koeck who was not

communicating with the firm during this critical time period, as she herself acknowledged.

This Court should not countenance Ms. Koeck's new-found argument that she terminated

Bernabei & Wachtel "for cause" when that purported "cause" was the fact that the firm refused

to comply with her directives to violate this Court's order.

**(3)      Ms. Koeck's "Explicit Instructions" Regarding the Proposed Counterclaims Were Not Well Grounded in the Facts or the Law.**

It appears that Ms. Koeck is also arguing that Bernabei & Wachtel's supposed failure to comply with her directives as to the filing of counterclaims in this action, or, alternatively, that Bernabei & Wachtel did not include statutory gender discrimination and retaliation counterclaims, somehow forecloses the firm from satisfying its attorney's lien.

However, Ms. Koeck's arguments as to the counterclaims misrepresent the history of how those counterclaims were discussed.

First, Ms. Koeck wanted Bernabei & Wachtel to represent her with respect to any counterclaims that *GE* might have against her, <u>not</u> counterclaims that she might bring against GE, as Ms. Koeck now claims.  In fact, she specifically added a hand-written phrase to her retainer agreement with the firm to that effect:

> Pursuant to this agreement, the Firm will represent the Client with respect to all claims the Client holds against General Electric . . . if it becomes apparent that they are engaged in wrongdoing ("the Defendant").  The Firm's representation of the Client is limited at this juncture to litigating this case **as well as any counter claims arising thereform in connection therewith** for the Client, up to and including trial if necessary.

<u>See</u> Retainer Agreement,  ¶ 1 (Ms. Koeck's hand-written addition is in bold face) (attached as Exhibit A to Mot. to Intervene).  Thus, Ms. Koeck's concern was that GE would bring counterclaims against her in response to her Sarbanes-Oxley whistleblower complaint.  As it happened, GE instead filed its claims in a complaint in this Court, instead of waiting for Ms. Koeck to remove her Sarbanes-Oxley complaint to a federal district court and then filing those same claims as counterclaims.  The consequence is the same – GE's claims against Ms. Koeck in this Court are equivalent to the "counter claims" that Ms. Koeck contemplated at the time she signed the retainer agreement.

Second, Ms. Koeck failed to inform this Court that she wanted to file three

counterclaims, as follows:

> 1) Breach of Contract and Frustration of Purpose--because there was no way that I could
> comply with GE's Confidentiality Agreement once I realized GE was continuing to
> cover-up criminal activity.

> 2) Defamation- The D.C. Bar Complaint was completely inaccurate.  They told the Bar
> Counsel that the SOX complaint "had failed".  They did not disclose that it had not failed
> on the merits nor that it was on appeal.  Reading the DC Complaint and the reasons GE
> filed the Complaint---there are grounds to go after them for this action.  Additionally---I
> never had poor performance at GE.  There was never any written record that I had poor
> performance by *anyone*.

> On the contrary, I had a great record, produced two Lean Six Sigma Projects, and
> requested a 360 review by HR and later GE Corporate.  Burse then said that a 360 was
> not necessary, despite the fact that I provided both groups the full list of projects and GE
> individuals with whom I worked on each team--- so that the a 360 could be conducted.

> 3) Tortious Interference--It is clear that Burse maliciously interfered with my position at
> GE and my ability to transfer to another GE business.

See A. Koeck to L. Bernabei (June 26, 2008) (attached and incorporated hereto as Exhibit 5).

The three counterclaims that Ms. Koeck wanted to discuss were all common-law claims, not

statutory discrimination and retaliation claims.

Although Ms. Koeck attached the firm's preliminary response, from the following day, in

which David Wachtel said, "On further review … we do not believe there is basis for them

[counter-claims]," see Def. Opp., Ex. A, Ms. Koeck failed to provide this Court with the firm's

substantive response on the following day, which set forth at greater length several factual and

legal problems with potential counter-claims, including a potential Section 1985 conspiracy

claim that counsel and Ms. Koeck had discussed:

> The potential counter-claims almost require a separate e-mail, as long as this or longer,
> but let me just state some of our concerns about each of them:

> > The bar complaint cannot be the basis for a defamation claim because it is like a
> judicial proceeding.

> Tortious interference must involve a relationship with a third party. Bad acts within a company are not tortious interference.

> After very close review, we found that Section 1985 applies to witnesses in judicial proceedings, not to witnesses involved in investigations.

> I believe that your second filing with the court mentions "whistleblower retaliation," but it isn't clear to me what kind of claim you are talking about.  If it is Sarbanes-Oxley claim, it belongs at the Department of Labor.  If it's 1985, see the comment above.

See D. Wachtel to A. Koeck, at 2 (June 27, 2008) (attached and incorporated hereto as Exhibit 6).  Thus, this email chain confirms that Ms. Koeck and Bernabei & Wachtel were discussing the common-law and other counterclaims that Ms. Koeck originally proposed, which were not colorable claims.

Therefore, Ms. Koeck's assertion that she fired Bernabei & Wachtel "for cause" because the firm failed to comply with her directives regarding the counterclaims ignores the fact that the supposed counterclaims were not legally supportable.  Ms. Koeck did ask the firm to file a Title VII claim, but the firm refused to do so because there was no proof to support such a claim.

> **(4)** **Bernabei & Wachtel Repeatedly Communicated with Ms. Koeck at Every Stage of This Litigation, and Any Failures to Communicate were Due to Her Unavailability During Critical Time Periods.**

Finally, this Court should not countenance any argument by Ms. Koeck that she terminated Bernabei & Wachtel because the firm failed to communicate with her.  In fact, as noted previously, it was Ms. Koeck who was unavailable to discuss key litigation issues in July 2008.  Ms. Koeck herself acknowledged that "I know you have been trying to reach me."  See Ex. 3 at 1.  Bernabei & Wachtel has made available to this Court the attorney fee invoices which show that the firm repeatedly communicated with Ms. Koeck throughout its representation of her.  See Ex. 8.  The firm will also make available, for this Court's review, the firm's correspondence files, which document innumerable emails between the firm and Ms. Koeck.

Thus, it was Ms. Koeck's unavailability during a critical time period that led to a lack of communication between the firm and her, so that this Court must find that Ms. Koeck had no "good cause" to terminate the firm.

**B.      Ms. Koeck Terminated Bernabei & Wachtel Without Just Cause.**

This Court should find that Ms. Koeck terminated Bernabei & Wachtel without just cause, and did so because (1) she owed the firm for legal expenses and fees should the case settle, and (2) the firm would not comply with her repeated directives to violate this Court's order.

The Supreme Court of Virginia, in addressing the client's termination of an attorney has set forth the following standard to determine whether the termination was without just cause:

> The grounds upon which [a termination] is based must be reasonable, and there should not be an abuse of the conferred right.  It must be a fair and honest cause or reason, regulated by good faith on the part of the party exercising the power.  It limits the party to the exercise of good faith, based upon just and fair grounds as distinguished from an arbitrary power.

Hughes v. Cole, 251 Va. 3, 22, 465 S.E.2d 820, 833 (Va. 1996) (quoting Quick v. Southern Churchman Co., 171 Va. 403, 417, 199 S.E. 489, 494-95 (1938)).

This Court should find that Ms. Koeck's termination of Bernabei & Wachtel does not satisfy the stringent criteria set forth in Hughes and Quick, since the termination was not "reasonable," was not made for "a fair and honest cause or reason" or otherwise made in "good faith."  Instead, Ms. Koeck improperly terminated Bernabei & Wachtel because she did not want to pay the legal costs she had committed to pay, and because the firm would not comply with her repeated directives to violate this Court's order.  These reasons do not satisfy the stringent criteria for proving a "for cause" termination.

### C.   Bernabei & Wachtel Is Entitled to Satisfy Its Statutory Lien for Attorney's Fees Pursuant to the Quantum Meruit Doctrine.

This Court should find that Bernabei & Wachtel is entitled to satisfy its statutory attorney's lien by obtaining its attorney's fees pursuant to the quantum meruit doctrine.  The Supreme Court of Virginia has explained that when an attorney is terminated without just cause, as here, the attorney is entitled to its fees under a quantum meruit recovery:

> We share the conclusion that quantum meruit is the most functional and equitable measure of recovery. . . .
>
> Having in mind the special nature of a contract for legal services, **we hold that when, as here, an attorney employed under a contingent fee contract is discharged without just cause and the client employs another attorney who effects a recovery, the discharged attorney is entitled to a fee based upon quantum meruit [FN4] for services rendered prior to discharge and, as security for such fee, to the lien granted by Code s 54-70.**
>
>> FN4.  As applied in this context, a quantum meruit determination looks to "the reasonable value of the services rendered, not in benefit to the client, but, in themselves".  County of Campbell v. Howard, 133 Va. 19, 51, 112 S.E. 876, 885 (1922).  See also Rule 6:II:DR2-106(B), which formalizes the reasonable fee standards enunciated in County of Campbell.

Heinzman v. Fine, Fine, Legum & Fine, 217 Va. 958, 964, 234 S.E.2d 282, 286 (Va. 1977) (emphasis added); accord Hughes, 251 Va. at 23 ("The law is clear that . . . 'the discharged attorney is entitled to a fee based upon quantum meruit for services rendered prior to discharge.'") (quoting Heinzman).

Thus, the Supreme Court held that it was reversible error to award the discharged attorney an award based on a contingency fee calculation, since the trial court should have awarded fees upon quantum meruit:

> Insofar as the judgment awards Legum a contractual fee, the judgment will be reversed and the case will be remanded with instructions to award Legum a fee based upon quantum meruit for services rendered prior to discharge.

Heinzman, 217 Va. at 965.

The Supreme Court identified the following factors that the trial court should consider in determining the quantum meruit fee amount:

> [T]he amount and character of the services rendered; the responsibility imposed; the labor, time and trouble involved; the character and importance of the matter in which the services are rendered; the amount of the money or the value of the property to be affected; the professional skill and experience called for; the character and standing in their profession of the attorneys; and whether or not the fee is absolute or contingent, it being a recognized rule that an attorney may properly charge a much larger fee where it is to be contingent than where it is not so.  The result secured by the services of the attorney may likewise be considered; but merely as bearing upon the consideration of the efficiency with which they were rendered, and, in that way, upon their value on a *quantum meruit,* not from the standpoint of their value to the client.

Hughes, 251 Va. at 25 (quoting County of Campbell v. Howard, 133 Va. 19, 51, 112 S.E. 876, 885 (Va. 1922)).  This Court has the "sound judicial discretion" to determine the "quantum meruit value of the services rendered to the [client] by the two sets of attorneys."  Id.

This Court should apply the quantum meruit doctrine to find that Bernabei & Wachtel is entitled to its fees under that doctrine.  The firm has previously provided Ms. Koeck with that itemization, a total of $214,935.77 as of August 12, 2008.  See L. Bernabei to A. Koeck, at 2 (Aug. 12, 2008) (attached and incorporated hereto as Exhibit 7) (this total did not include several expenses that were not billed until September 2008).  The firm is now providing this Court with an itemized invoice setting forth its hourly fees and expenses through August 8, 2008, including expenses that were not billed until later months.  See Bernabei & Wachtel invoices (Nov. 2007-Dec. 2008) (attached and incorporated hereto as Exhibit 8).  Ms. Koeck has only paid the firm $950.70 for expenses, and owes the firm $4,283.60 in expenses.  Id.  Ms. Koeck owes the firm $214,054.90 in attorney's fees.  See Spreadsheet, "Koeck through 8/08/08" (attached and incorporated hereto as Exhibit 9).  Thus, this Court should find that Ms. Koeck owes Bernabei & Wachtel a total of $218,338.50, pursuant to the quantum meruit doctrine.

III.    __CONCLUSION.__

This Court should find that Ms. Koeck has made material misrepresentations in her opposition to Bernabei & Wachtel's motion to intervene, including (1) the nature of her compensation under the pending settlement; (2) the reasons for which she terminated Bernabei & Wachtel; (3) her repeated, improper directives that Bernabei & Wachtel violate this Court's orders by not turning over all documents and hard drives; (4) her discussion regarding potential counterclaims; and (5) her failure to communicate with Bernabei & Wachtel during critical time periods.  For the foregoing reasons, and those set forth in the motion to intervene, this Court should find that Bernabei & Wachtel has standing to intervene, should allow the firm to receive the appropriate share of Ms. Koeck's settlement with GE under the quantum meruit doctrine, and should make the appropriate determination of the fees owed by Ms. Koeck to the firm.

Respectfully submitted,

/s/

_____
Alan R. Kabat, Esquire
Virginia Bar No. 76898
Attorney for Bernabei & Wachtel, PLLC
Bernabei & Wachtel, PLLC
1775 T Street N.W.
Washington, D.C.  20009-7124
(202) 745-1942
(202) 745-2627 (fax)
kabat@bernabeipllc.com

DATED:  January 30, 2009

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this <u>30th</u> day of January 2009, a copy of the foregoing Reply

Brief in Support of Motion to Intervene was served on all counsel of record by email and by this

Court's Electronic Case Filing System on:

| | |
|---|---|
| Charles B. Wayne<br>Elisha A. King<br>DLA Piper US LLP<br>500 8th Street, NW<br>Washington, DC 20004 | Grant E. Morris<br>Law Offices of Grant E. Morris<br>1666 Connecticut Avenue, N.W.<br>Suite 310<br>Washington, D.C. 20009 |
| Barbara Van Gelder<br>Morgan, Lewis & Bockius, LLP<br>1111 Pennsylvania Ave., NW<br>Washington, DC 20004 | David Weissbord Sanford, Esquire<br>Sanford, Wittels & Heisler, LLP<br>1666 Connecticut Avenue, NW,<br>Suite 310<br>Washington, DC 20009 |
| Sarah E. Bouchard<br>Anne E. Martinez<br>Morgan, Lewis & Bockius, LLP<br>1701 Market Street<br>Philadelphia, PA  19103 | Robert B. Nealon, Esquire<br>Nealon & Associates, PC<br>119 N. Henry Street<br>Alexandria, VA  22314 |

/s/
_____
Alan R. Kabat, Esquire
Virginia Bar No. 76898
Attorney for Bernabei & Wachtel, PLLC
Bernabei & Wachtel, PLLC
1775 T Street N.W.
Washington, D.C.  20009-7124
(202) 745-1942
(202) 745-2627 (fax)
kabat@bernabeipllc.com